

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RMT/AAS:ICR/JEA

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 1, 2020

By E-Mail and ECF

The Honorable Steven M. Gold
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Colinford Mattis and Urooj Rahman
Magistrate Docket No. 20-403

Dear Judge Gold:

Later today, defendants Colinford Mattis and Urooj Rahman are scheduled to be presented before Your Honor on the above-referenced complaint. For the reasons set forth below, the government respectfully submits that the Court should enter a permanent order of detention because the defendants present a severe and ongoing danger to the community and a serious risk of flight.

I. The Offense Conduct[1]

On the night of May 29, into the early morning of May 30, 2020, thousands of people held large demonstrations in Brooklyn, New York to protest the death of George Floyd, an African-American man who died during an arrest by Minneapolis police officers earlier that week. During the demonstrations, certain individuals and groups of individuals unlawfully obstructed the flow of vehicle traffic on city streets and refused commands from New York City Police Department ("NYPD") officers to leave the streets and return to the sidewalks. Some individuals and groups of individuals vandalized vehicles and businesses with graffiti and by smashing the vehicles and windows of the businesses with heavy objects. Some individuals and groups of individuals targeted the NYPD, vandalizing NYPD vehicles that had responded to the protests, and in some cases, attempting to gain access to NYPD

---

[1] Detailed herein are a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

stationhouses without authorization, thus interfering and obstructing the NYPD's efforts to maintain and restore order.

In the early hours of May 30, 2020, the defendants drove in a tan minivan to the vicinity of the NYPD's 88th Precinct located in Fort Greene, Brooklyn. Upon identifying an NYPD vehicle, Rahman exited from the passenger's side front door of the minivan, approached the NYPD vehicle, and then lit and threw an incendiary device consisting of a glass bottle containing an incendiary chemical (sometimes referred to as a "Molotov cocktail" device) into the NYPD vehicle through a previously broken window. The Molotov cocktail set fire to the console of the NYPD vehicle. After throwing the Molotov cocktail in the NYPD vehicle, Rahman returned to the minivan, which fled the scene.

This conduct was captured on video surveillance cameras in the area. Law enforcement officers also observed Rahman throw the Molotov cocktail in the NYPD vehicle and followed the tan minivan during its attempt to flee. Shortly thereafter an NYPD patrol vehicle stopped the vehicle and placed Mattis, the driver, and Rahman, the passenger, under arrest. During the arrest, officers observed in plain view several precursor items used to build a Molotov cocktail, including a lighter, a Bud Light beer bottle filled with toilet paper and a liquid suspected to be gasoline in the vicinity of the passenger seat and a gasoline tank in the rear of the vehicle. The tan minivan was identified as a tan 2015 Chrysler town and Country minivan with New York license plate JMU 7197, which was registered to Mattis.

Though Mattis and Rahman were initially taken into custody by the NYPD, the instant prosecution commenced after the government filed a one-count complaint charging Mattis and Rahman with causing damage by fire and explosives to a police vehicle, in violation of 18 U.S.C. § 844(i).

A witness provided authorities with a picture of Rahman and Mattis in the tan minivan earlier in the night with Rahman holding a Molotov cocktail. The picture is shown below. The witness stated, in sum and substance, that Rahman attempted to distribute Molotov cocktails to the witness and others so that those individuals could likewise use the incendiary devices in furtherance of more destruction and violence.




Below are the defendants' arrest photographs, showing they were dressed in the same clothes depicted in the above photograph.






II. <u>Legal Standard</u>

Under the Bail Reform Act, Title 18, United States Code, Section 3141, <u>et seq</u>., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. <u>See</u> 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. <u>See</u> <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995); <u>United States v. Chimurenga</u>, 760 F.2d 400, 405 (2d Cir. 1985). A

finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). As discussed below, these factors weigh heavily against pretrial release.

For certain offenses, including the offense charged in the Complaint, the law presumes that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community. 18 U.S.C. § 3142(e)(3). This presumption may be rebutted by the defendant, provided the defendant is able to present evidence that she is neither a danger nor a risk of flight. See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Even upon such a showing, however, the presumption in favor of detention "does not disappear entirely, but remains a factor to be considered among those weighed[,]" id., because it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial" and "represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." United States v. Stone, 608 F3d 939, 945-946 (6th Cir. 2010) (internal quotation marks and citation omitted) (ellipsis in original).

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also LaFontaine, 210 F.3d at 130-31. In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. Id. at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) ("[The defendant] has twice been convicted of weapon possession--one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

## III. The Court Should Enter a Permanent Order of Detention

The factors to be considered in the detention analysis show that the defendants present both a severe and ongoing danger to the community and a serious risk of flight if released on bond. Because the law presumes that there is no set of conditions that will reasonably assure the defendants' appearance or the safety of the community, and because that presumption cannot be rebutted for the reasons set forth below, the Court should enter a permanent order of detention for both defendants pending trial.

A. The Nature and Circumstances of the Offense Charged

The defendants' criminal conduct was extraordinarily serious.

Amid the largely peaceful demonstrations taking place on Friday night, Mattis and Rahman committed an act of potentially deadly violence. They sought out and targeted an NYPD vehicle. Rahman then hurled a Molotov cocktail at that vehicle, causing fire and damage inside. They conducted this improvised incendiary device attack in close proximity to other individuals on the street, placing those individuals in grave danger. With that attack complete, Mattis acted as the getaway driver for Rahman, as the two sought to escape the scene and avoid arrest.

The contents of the defendants' vehicle – including at least one other fully assembled Molotov cocktail as well as other precursor materials – reflects that the defendants intended to conduct other similar attacks opportunistically thereafter. In addition, the defendants sought to incite others to launch similar attacks and attempted to distribute other Molotov cocktails to other protestors in furtherance of this objective.

In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a crime of violence, a Federal crime of terrorism, or a crime involving an explosive or destructive device. See 18 U.S.C. § 3142(g)(1). The charge offense falls within multiple such categories, confirming that Congress viewed this crime as sufficiently serious to factor against release on bond.

Indeed, as set forth above, Congress recognized the seriousness of the charged offense by specifically enumerating 18 U.S.C. § 844(i) among those offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond. Specifically, Section 844(i), which carries a maximum term of 20 years' imprisonment, is "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed," see 18 U.S.C. § 3142(e)(3)(C), and therefore gives rise to a presumption of detention.

The defendants face a mandatory minimum sentence of five years' imprisonment and up to 20 years' imprisonment. The prospect of a lengthy term of incarceration may reasonably incentivize the defendants to flee and thus establishes the defendants' status as a serious risk of flight. United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

B. The Weight of the Evidence

The weight of the evidence in this case is overwhelming. The defendants were caught on camera firebombing an NYPD vehicle. Moreover, just minutes after committing that dangerous and violent act, they were arrested with another assembled Molotov cocktail

as well as other precursor materials that could be used to make additional destructive devices. And the defendants were photographed by another witness while they were attempting to incite others to commit attacks with Molotov cocktails they provided.

C. The Defendant's History and Characteristics

Both defendants are licensed attorneys who have attended prestigious universities and law schools. As such, the defendants were well aware of the severity of their criminal conduct when they decided to hurl a Molotov cocktail at an NYPD vehicle and to incite others to do the same. They knew their acts endangered the NYPD officers and protestors on the street, as well as their own futures, and the defendants were undeterred.

D. The Nature and Seriousness of the Danger to the Community Posed by Release

The defendants pose a severe and ongoing risk to the community. They have committed an attack with an incendiary device and sought to aid and abet others in similar attacks. Amid the ongoing social unrest in New York City, the government respectfully submits that these defendants, if placed on pretrial release, would return to rioting, destroying property, and endangering others. Indeed, these defendants—attorneys and purported officers of the court—were already acutely aware of the danger they posed to the public in acting in total disregard of the law. There is no reason the Court should give them the benefit of the doubt that, this time, they will respect the Court's orders regarding terms of pretrial release.

IV. Conclusion

In summary, these defendants abdicated their responsibilities as attorneys. Instead of using their privileged positions to change society lawfully, they used a Molotov cocktail and sought to incite others to adopt their violent ways. They hid under the cloak of peaceful protests and attacked the institutions and individuals who keep them safe and protect their Constitutional rights. They present a severe and ongoing danger to the community, as well as a serious risk of flight, that no set of release conditions can mitigate.

For all of the foregoing reasons, including the legal presumption that there is no set of conditions that will reasonably assure the defendants' appearance or the safety of

the community, the government respectfully submits that the Court should thus enter permanent orders of detention pending trial.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: /s/
Ian C. Richardson
Jonathan E. Algor
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (by ECF)